IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LYNNE MAYO,                          )
                                     )
              Plaintiff              )
                                     )          Civil Action
         vs.                         )          No. 11-cv-06026
                                     )
                                     )
BANGOR AREA SCHOOL DISTRICT,         )
                                     )
              Defendant              )

*   *   *

APPEARNANCES:

     DONALD P. RUSSO, ESQUIRE
          On Behalf of Plaintiff

     JOHN E. FREUND, III, ESQUIRE
     ANDREW THEYKEN BENCH, ESQUIRE
          On Behalf of Defendant

*   *   *

**O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge

          This matter is before the court on Defendant's Motion

for Summary Judgment filed February 15, 2013.[1]  For the reasons

---

[1]          Defendant's Motion for Summary Judgment (Document 27) was filed
together with Exhibits 1 through 24 (Documents 27-4 through 27-7,
collectively), and Defendant's Brief in Support of Motion for Summary
Judgment (Document 27-8)("Defendant's Brief").

          On March 20, 2013 Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion for Summary Judgment (Document 31)("Plaintiff's
Memorandum") was filed, together with three unnumbered exhibits.

(Footnote 1 continued):

expressed in this Opinion, I grant Defendant's Motion for Summary Judgment and enter judgment in favor of defendant Bangor Area School District and against plaintiff Lynne Mayo on plaintiff's Complaint filed September 23, 2011.

<u>SUMMARY OF DECISION</u>

Plaintiff Lynne Mayo, Psy.D., was employed by defendant Bangor Area School District ("District") as a school psychologist from March 27, 2009 until she resigned from that position on September 23, 2009.  In this civil action, plaintiff alleges that she was constructively discharged from her employment with defendant in violation of her due process rights guaranteed by the Fourteenth Amendment to the United States Constitution.

Because employee resignations are presumed to be voluntary, plaintiff must provide sufficient evidence to overcome that presumption.  More specifically, plaintiff must provide sufficient evidence upon which a reasonable jury could conclude that defendant knowingly permitted conditions so

_____

(<u>Continuation of footnote 1</u>):

On April 5, 2013, Defendant's Reply Brief in Support of Motion for Summary Judgment (Document 36)("Defendant's Reply Brief") was filed, as was the Concise Statement of Facts of Defendant Bangor Area School District (Document 37)("Defendant's Statement of Facts").

On April 17, 2013, Plaintiff's Response to Concise Statement of Facts of Defendant Bangor Area School District (Document 39)("Plaintiff's Statement of Facts") was filed, together with three unnumbered exhibits (Document 39-2).

intolerable that a reasonable person subject to those conditions would be compelled to resign.

Although plaintiff has provided evidence indicating that her work conditions were unpleasant, she has failed to make the requisite showing that her resignation was involuntarily procured.  To the contrary, the evidence indicates that plaintiff made an informed choice between working in an unpleasant work environment and resigning.  Accordingly, the facts presented in this case are insufficient to support a finding of constructive discharge.

Viewing the record evidence in the light most favorable to plaintiff and drawing all reasonable inferences in her favor as the non-movant, as I am required to do by the applicable standard of review described below, I conclude that plaintiff has failed to provide such evidence.  Therefore, I grant Defendant's Motion for Summary Judgment.

JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Specifically, plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging a violation of her federal procedural due process rights.

-3-

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claim allegedly occurred in Northampton County, Pennsylvania, which is located within this judicial district.

PROCEDURAL HISTORY

Plaintiff initiated this civil rights action on September 23, 2011 by filing a one-count Complaint asserting a claim against defendant pursuant to 42 U.S.C. § 1983 alleging a violation of her procedural due process rights guaranteed by the Fourteenth Amendment to the United States Constitution.

On December 9, 2011, defendant filed a motion seeking to dismiss plaintiff's Complaint on grounds of claim- and issue-preclusion.  By Order dated and filed on March 28, 2012, and for the reasons articulated in the footnotes to that Order, defendant's motion to dismiss was denied.

On April 11, 2012, defendant filed its Answer and Affirmative Defenses to plaintiff's Complaint.

On February 15, 2013, following the completion of discovery, Defendant's Motion for Summary Judgment was filed, together with Defendant's Brief and supporting documents.

On March 20, 2013, Plaintiff's Memorandum was filed, together with three unnumbered exhibits, in opposition to summary judgment.

On April 5, 2013, Defendant's Reply Brief and Defendant's Statement of Facts were each filed.[2]

On April 17, 2013, Plaintiff's Statement of Facts was filed, together with three unnumbered exhibits.

On May 22, 2013, defendant submitted, by letter to the court with a copy to plaintiff's counsel, supplemental authority in support of its motion for summary judgment.[3]

---

[2]    The Rule 16 Status Conference Order dated August 24, 2012 and filed August 28, 2012 (Document 19) required any party filing a motion for summary judgment to file a separate concise statement of material facts, in numbered paragraphs, with specific citations to the record.  Failure to file such a statement "may constitute grounds for denial of the motion." (Rule 16 Status Conference Order at page 3.)  Similarly, any party responding to a motion for summary judgment was required to file a separate concise statement of material facts responding in numbered paragraphs to the moving party's statement, and "[a]ll factual assertions set forth in the moving party's statement shall be deemed admitted unless specifically denied by the opposing party in the manner set forth" in the Rule 16 Status Conference Order.  (Id.)

Defendant's counsel did not file the requisite separate concise statement of material facts together with Defendant's Motion for Summary Judgment.  Plaintiff's counsel accurately notes that defendant was permitted to provide a separate, concise statement of the undisputed material facts after Defendant's Motion for Summary Judgment and Plaintiff's Memorandum were filed.  (See Plaintiff's Statement of Facts at page 3, footnote 1.)

However, plaintiff's counsel fails to mention that he failed (1) to seek denial of summary judgment on that ground in Plaintiff's Brief and (2) to file a separate concise statement of material facts in support of plaintiff's position together with Plaintiff's Brief.  (See id.)

Moreover, plaintiff's counsel fails to acknowledge that he too was permitted to file a responsive statement of facts on plaintiff's behalf.  (See id.)  Specifically, by Order dated April 4, 2013 and filed April 5, 2013 (Document 34), I permitted defendant an opportunity to file the requisite statement of facts, and plaintiff an opportunity to file a responsive statement, for the purpose of aiding in the appropriate disposition of Defendant's Motion for Summary Judgment.

Plaintiff's counsel states that, as a result of my April 4, 2013 Order, "[p]laintiff is now placed in a position where she has to respond to information that she was not provided with at the time she was preparing and drafting her response to the Motion for Summary Judgment." (Plaintiff's Statement of Facts, footnote 1.)  However, plaintiff's counsel does not

(Footnote 2 continued):

In response, by letter dated May 29, 2013, plaintiff submitted supplemental authority[4] in support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.  In plaintiff's May 29, 2013 letter, she also argues that defendant's letter dated May 22, 2013 was inappropriate and should be stricken from the record because it did not direct the court to review any new precedents.

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

---

(<u>Continuation of footnote 2</u>):

specify how, if at all, he would have responded differently to Defendant's Motion for Summary Judgment.  Moreover, plaintiff's counsel did not seek leave to file a surreply brief in order to respond to Defendant's Reply Brief and/or Defendant's Statement of Facts.

[3]      In his letter submission, defendant's counsel quotes the United States Court of Appeals for the Third Circuit as stating that "[e]mployee resignations and retirements are presumed to be voluntary and not subject to the doctrine of constructive discharge."  (Defendant's Supplemental Letter at page 1, <u>citing</u> <u>Leheny v. City of Pittsburgh</u>, 183 F.3d 220, 227 (3d Cir. 1999).)  However, what the Third Circuit Appeals Court said in <u>Lenehy</u> was "[e]mployee resignations and retirements are presumed to be voluntary." <u>Leheny</u>, 183 F.3d at 227.  The next sentence in <u>Leheny</u> states that "[t]his presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured."  <u>Leheny</u>, 183 F.3d at 227.

Based upon my prior experience with defense counsel, I conclude that the misplacement of the close quotation mark (") after the word "discharge.", rather than after the word "voluntary." was an unintentional oversight.

[4]      Specifically, plaintiff's May 29, 2013 letter refers to <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157 (3d Cir. 2013).

of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 433 (3d Cir. 2003).  Only facts that may affect the outcome of a case are "material".  Moreover, all reasonable inferences from the record are drawn in favor of the non-movant.  Anderson, supra.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which she bears the burden of proof.  See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).

Plaintiff cannot avert summary judgment with speculation or by resting on the allegations in her pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

<u>FACTS</u>

Based upon the pleadings, record papers, depositions, affidavits, exhibits and the parties' respective statements of facts, the pertinent facts are as follows.

Plaintiff Lynne Mayo, Psy.D., was employed at defendant Bangor Area School District on March 27, 2009 as a School Psychologist.  Plaintiff worked with students in elementary school through high school while employed by defendant.  Furthermore, plaintiff's position was a 12-month "Act 93 position" under the Pennsylvania Public School Code of 1949.[5]

The Director of Instructional Support Services for defendant, Joseph Gunnels, was plaintiff's supervisor when plaintiff was hired.  Mr. Gunnels served as plaintiff's supervisor for approximately four months before resigning as Director of Instructional Support Services in June 2009 to accept a position as a classroom teacher for defendant.[6]

Plaintiff also reported to the Coordinator of Secondary Special Education, Daniel Borden, and the Coordinator of Elementary Special Education, Victoria Kropf.  While plaintiff worked under Mr. Gunnels' supervision, Mr. Borden and Ms. Kropf organized plaintiff's assignments and fieldwork. Furthermore, Mr. Borden and Ms. Kropf scheduled plaintiff's student evaluations.  Any reporting by plaintiff to Mr. Borden

---

[5]     Public School Code of 1949, March 10, 1949, P.L. 30, art .I-XXVII, §§ 101-2702, as amended, 24 P.S. §§ 1-101 through 27-2702.  Defendant's Statement of Facts at ¶ 2.

[6]     Defendant's Exhibit 2, Transcript of Deposition of Joseph Gunnels taken November 5, 2012 ("Gunnels Deposition"), at page 8.

or Ms. Kropf related to cases plaintiff was assigned in the elementary school or high school.[7]

Dr. Patricia Mulroy was defendant's Assistant Superintendent at all times relevant to this case.  During Mr. Gunnels' tenure as Director of Instructional Support Services, he reported directly to Dr. Mulroy.[8]

Plaintiff did not have a working computer for the first two weeks of her employment and was unable to access the District's database or scoring programs until April 22, 2009.[9]

Soon after plaintiff commenced her employment, she asked Dr. Mulroy whether she would be afforded autonomy regarding her report writing.  Dr. Mulroy instructed plaintiff to "follow Shillabeer's lead", stating that "there is no autonomy here".[10]  Dr. Richard Shillabeer was another School Psychologist employed by the District.  As a result, plaintiff was on Dr. Shillabeer's reporting timeline.

Two weeks after she was hired, plaintiff was called into a meeting with Mr. Gunnels and the Assistant to the

---

[7]     Defendant's Exhibit 4, Transcript of Deposition of Richard Shillabeer taken December 6, 2012 ("Shillabeer Deposition"), at page 11.

[8]     Gunnels Deposition at page 9.

[9]     Defendant's Exhibit 1, Transcript of Deposition of Lynn A. Mayo taken September 18, 2012 ("Mayo Deposition"), at page 27.  There is no evidence indicating that these issues affected subsequent performance evaluations of plaintiff.

[10]    Mayo Deposition at page 25.

Superintendent, Frank DeFelice, where plaintiff was questioned about her attendance.  Mr. Gunnels testified that defendant's concerns about plaintiff's attendance existed from the time plaintiff began her employment with defendant.  However, Mr. Gunnels also testified that there was a pattern of untimeliness established by plaintiff's predecessor.[11]

During the 2008-2009 school year, Ms. Kropf and Dr. Shillabeer made frequent attempts to ascertain plaintiff's whereabouts in the district.[12]  On several occasions, Ms. Kropf and Dr. Shillabeer complained to Mr. Borden that plaintiff was coming to work late, ignoring deadlines, and skipping appointments.[13]

However, plaintiff testified that she was always in the location where she was supposed to be.[14]  Likewise, Mr. Borden testified that he found no evidence substantiating those complaints.[15]

On May 29, 2009, plaintiff was called to a meeting with Mr. Gunnels, Ms. Kropf, and Mr. DeFelice, where a number of issues were addressed, including plaintiff's failure to submit

---

[11]        Gunnels Deposition at pages 50-51.

[12]        Plaintiff's Statement of Facts, unnumbered exhibit, Statement of Daniel Borden ("Borden Statement"), at page 1.

[13]        Borden Statement at page 1.

[14]        Mayo Deposition at page 31.

[15]        Borden Statement at page 1.

evaluation reports and test data, plaintiff's attendance, and plaintiff's tardiness.[16]

The May 29, 2009 meeting began with Ms. Kropf discussing cases where testing information was due or pending. However, plaintiff contends that Ms. Kropf left the meeting before plaintiff arrived and that Mr. DeFelice was not in attendance.[17]

Mr. Gunnels testified that during his supervision of plaintiff, she was out of compliance with deadlines on some student reports.[18]  However, plaintiff was given a backlog of tasks that her predecessor had not completed.  Also, two of plaintiff's colleagues frequently complained about the workload.[19]

Defendant's school psychologists, including plaintiff, were contractually obligated to work for ten days in the school office after the close of the school year.[20]

---

[16]     Gunnels Deposition at pages 37, 42; see also Defendant's Exhibit 16, one-page letter from Joseph A. Gunnels to Dr. Linda Mayo dated June 1, 2009.

[17]     Plaintiff's Statement of Facts at ¶ 20.

[18]     Gunnels Deposition at pages 34, 42.

[19]     Id. at pages 49-51.

[20]     Defendant's Exhibit 6, Transcript of Deposition of Patricia Mulroy taken December 11, 2012 ("Mulroy Deposition"), at page 31; see also Defendant's Exhibit 19, email sent from Joseph Gunnels to Linda Mayo on June 25, 2009.

Around the end of the 2008-2009 school year, plaintiff was assigned the task of completing psychological reports for several students who were graduating from high school in the Spring of 2009 and were to begin college in the Fall of 2009. It was imperative that plaintiff complete the reports in a timely manner so that the colleges could make appropriate accommodations for the students.[21]

On June 23, 2009, Mr. Gunnels wrote plaintiff a satisfactory End-of-Year Employee Evaluation.[22]  The evaluation was written before Mr. Gunnels' resigned as Director of Instructional Support Services.  The evaluation stated that plaintiff's work was acceptable and merited a satisfactory performance rating.  However, that evaluation was not made on a standard PDE 426 or 428 evaluation form.[23]

PDE forms 426 and 428 are official evaluation instruments issued by the Pennsylvania Department of Education. A 428 form is used for a tenured employee, whereas a 426 form is used for an employee who has not achieved tenure status.[24]

---

[21]    Defendant's Exhibit 5, Transcript of Deposition of Victoria Kropf taken December 6, 2012 ("Kropf Deposition"), at page 25; see also Defendant's Exhibit 17, emails sent from Victoria Kropf to Linda Mayo on  May 14, 2009 and May 26, 2009.

[22]    See Mayo Deposition, Exhibit 5, End-of-Year Employee Evaluation dated June 23, 2009.

[23]    See Mayo Deposition, Exhibit 5, End-of-Year Employee Evaluation dated June 23, 2009.

[24]    Gunnels Deposition at pages 14-18.

After completing plaintiff's evaluation, Mr. Gunnels discussed the evaluation with Dr. Mulroy, Mr. DeFelice, and the Superintendent, John Reinhardt.  In his deposition testimony, Mr. Gunnels implied that his superiors did not agree with his evaluation of plaintiff.[25]

On June 25, 2009, Mr. Gunnels sent an email to plaintiff regarding her failure to report to work on scheduled work days and her failure to complete reports for students heading to college.[26]  Additionally, Mr. Gunnels explained that plaintiff was responsible for making up absences from previously scheduled work days as part of her summer work days.[27]

On July 1, 2009, when Mr. Gunnels resigned as Director of Instructional Support Services, Ms. Kropf took over as plaintiff's immediate supervisor.[28]  Ms. Kropf reviewed the drafts of plaintiff's psychological reports until she became too busy to do so.  At that time, Ms. Kropf assigned the

---

[25]      Defendant does not address Mr. Gunnels' June 23, 2009 evaluation in its Motion for Summary Judgment or Concise Statement of Facts.  See generally Defendant's Motion for Summary Judgment; Defendant's Statement of Facts.  Moreover, defendant does not provide any evidence to refute the existence of Mr. Gunnels' evaluation.

[26]      Mayo Deposition, Exhibit 4, email from Joseph Gunnels to Linda Mayo dated June 25, 2009.

[27]      Id.

[28]      Mayo Deposition at page 24.

responsibility of reviewing plaintiff's drafts to Dr. Shillabeer.[29]

Dr. Mulroy directed that Ms. Kropf and Dr. Shillabeer review plaintiff's draft reports.  Dr. Mulroy testified that plaintiff's reports were being reviewed because the District was being monitored by the Pennsylvania Department of Education.[30]

During the afternoon of June 30, 2009, Mr. DeFelice telephoned plaintiff and asked her to come in to discuss her evaluation.  However, plaintiff was almost home when she received the phone call.  Therefore, plaintiff did not return to the school that day.[31]

On July 1, 2009, Ms. Kropf issued an unsatisfactory performance evaluation of plaintiff on a PDE 428 evaluation form.[32]  Ms. Kropf's evaluation discussed plaintiff's failure to complete evaluation reports and her failure to present those reports to parents.  The evaluation also discussed plaintiff's

---

[29]     Mayo Deposition at pages 29-30.

[30]     Defendant's Statement of Facts states that the District's student evaluation reports were always reviewed because the District's Special Education Department was monitored by the Department of Education and the District was trying to improve compliance.  Defendant's Statement of Facts at ¶ 17.  In response, plaintiff states that she was not privy to this information prior to Dr. Mulroy's deposition.  Plaintiff's Statement of Facts at ¶ 17.

[31]     Mayo Deposition at page 71.

[32]     See Mayo Deposition at page 22; see also Kropf Deposition at pages 18-20, 23; Defendant's Exhibit 18, Employee Evaluation Form for Instructional II Teachers dated July 1, 2009.

inadequate record keeping, unreturned student folders, and failure to work on all of the required summer work days.[33]

Ms. Kropf's evaluation served as plaintiff's official performance evaluation.[34]  Mr. Gunnels was not consulted regarding the making of Ms. Kropf's evaluation.[35]  Furthermore, part of the 428 evaluation form included the form number "426", the form number used for evaluation of non-tenured employees.[36]

On July 2, 2009, Mr. DeFelice sent an email to plaintiff regarding her failure to attend her evaluation meeting and her failure to complete required paperwork.[37]  Mr. DeFelice also informed plaintiff that student records and testing materials should remain at the school unless she receives permission from the administration to remove them.[38]  Further,

---

[33]     Employee Evaluation Form for Instructional II Teachers dated July 1, 2009.

[34]     Id.

[35]     Gunnels Deposition at page 16.

[36]     Employee Evaluation Form for Instructional II Teachers dated July 1, 2009, at page 5.  In addition to the additional form number, plaintiff notes that there is no postmark date in the postmark area, on the receipt, or on the evaluation itself.  Id.

[37]     Defendant's Exhibit 9, email from Frank DeFelice to Linda Mayo dated July 2, 2009, with copies indicated to Victoria Kropf and Patricia Mulroy.

[38]     Id.

Mr. DeFelice requested that plaintiff return the files and materials to defendant.[39]

When plaintiff failed to respond to Mr. DeFelice's email, Mr. DeFelice sent a copy of plaintiff's unsatisfactory evaluation and a copy of the July 2, 2009 email to plaintiff by certified mail.[40]  However, plaintiff does not recall receiving a copy of her unsatisfactory evaluation at that time.[41]

Plaintiff explained that she took student files to her home because "there was an urgency to complete [the] reports."[42] However, plaintiff also stated that she was well within the reporting timelines in light of her time off for summer vacation.[43]

The fact that plaintiff removed student files from the school concerned Dr. Mulroy because the files were confidential. Dr. Mulroy was also concerned because defendant was unable to elicit a response from plaintiff and needed the files for year-end reporting.[44]  However, plaintiff was not aware of that

---

[39]      Defendant's Exhibit 9, email from Frank DeFelice to Linda Mayo dated July 2, 2009, with copies indicated to Victoria Kropf and Patricia Mulroy.

[40]      Defendant's Exhibit 24, letter from Frank DeFelice, Assistant to the Superintendent, to Dr. Linda Mayo. (The date of the letter is not visible.)

[41]      Plaintiff's Statement of Facts at ¶ 29.

[42]      Mayo Deposition at page 38-39.

[43]      Plaintiff's Statement of Facts at ¶ 33.

concern until she reviewed Dr. Mulroy's deposition.[45]
Nonetheless, plaintiff was aware of Ms. Kropf's concern that the
student files would not be completed in time for the colleges to
review them.[46]

On July 14, 2009, Dr. Mulroy telephoned, and later
emailed, plaintiff.  During that telephone conversation,
Dr. Mulroy informed plaintiff of Ms. Kropf's evaluation.
Thereafter, Dr. Mulroy informed plaintiff that they needed to
discuss the evaluation.[47]  In addition, Dr. Mulroy told plaintiff
that plaintiff was the least professional person that Dr. Mulroy
had worked with.[48]

Later that day, Dr. Mulroy emailed plaintiff regarding
plaintiff's failure to complete student evaluation reports and
her failure to meet with Dr. Mulroy and Mr. DeFelice.  Dr. Mul-
roy also noted in that email that plaintiff failed to send
reports as plaintiff had promised during their earlier phone
conversation.[49]  Dr. Mulroy's email also informed plaintiff that

---

[44]     Mulroy Deposition at page 31.

[45]     Plaintiff's Statement of Facts at ¶ 31.

[46]     Id. at ¶ 33.

[47]     Defendant's Exhibit 21, email from Patricia Mulroy to Linda Mayo
dated July 14, 2009, with copies indicated to Frank DeFelice, John Reinhart,
and Steve Wiencek.

[48]     Mayo Deposition at page 39.

[49]     Defendant's Exhibit 21, email from Patricia Mulroy to Linda Mayo
dated July 14, 2009, with copies indicated to Frank DeFelice, John Reinhart,
and Steve Wiencek.

defendant was sending its Chief of School Policy, Ralph Falcone, to plaintiff's home to retrieve the District's records and belongings, folders, the district computer, A/C adapter, and computer carrying case.[50] Furthermore, Dr. Mulroy stated that, when plaintiff was able to meet, they would discuss the protocols and responsibilities that plaintiff was expected to follow in the future.[51]

Later that afternoon, plaintiff emailed student reports to Dr. Mulroy's Administrative Assistant.[52]

The following day, July 15, 2009, Dr. Mulroy sent Mr. Falcone, Chief of School Policy, to plaintiff's home to retrieve the student files and other school property. Plaintiff was not home when Mr. Falcone arrived because she had a medical appointment. Plaintiff's uncle and mother were home but they did not answer the door. During a telephone conversation, plaintiff told her uncle and mother not to answer the door.

On July 22, 2009, Jessica Moyer, Esquire, defendant's Assistant Solicitor, emailed plaintiff about issues regarding plaintiff's job performance. In her July 22, 2009 email, Attorney Moyer requested plaintiff to immediately return

---

[50]    Defendant's Exhibit 21, email from Patricia Mulroy to Linda Mayo dated July 14, 2009, with copies indicated to Frank DeFelice, John Reinhart, and Steve Wiencek.

[51]    Id.

[52]    Plaintiff's Statement of Facts at ¶ 34.

numerous School District items.  Attorney Moyer further advised
plaintiff that charges would be made against plaintiff if
plaintiff did not return those items.[53]  However, plaintiff did
not read that email because defendant had already confiscated
plaintiff's work computer.[54]

Also on July 22, 2009 defendant held a pre-termination
hearing for plaintiff.  Dr. Mulroy testified that the meeting
was an attempt to put an action plan into place.  However, no
action plan was put into place at that time.

Plaintiff was accompanied at the July 22, 2009 meeting
by Dr. Nicholas G. Brogno, a psychologist with whom plaintiff
had worked in the past.  Dr. Mulroy and Mr. DeFelice were also
at the meeting.  During the meeting, Dr. Mulroy informed
plaintiff that if she did not resign she would be terminated
from her position.[55]

Dr. Brogno stated in a sworn declaration that he
believed defendant's student evaluation process was flawed.[56]

---

[53]        Defendant's Exhibit 8, mail from Jessica F. Moyer, Esquire,
Assistant Solicitor for Bangor Area School District, to Ms. Mayo dated
July 22, 2009.

[54]        Mayo Deposition at page 42.

[55]        Id. at pages 41-42.

[56]        Pursuant to Fed.R.Civ.P. 56(c)(4), Dr. Brogno executed the
Declaration of Nicholas G. Brogno (Document 31-1).  Plaintiff attached the
declaration to Plaintiff's Memorandum of Law in Opposition to Summary
Judgment.  In Defendant's Reply Brief, defendant contends that Dr. Brogno's
affidavit is a "jumbled litany of hearsay, personal opinion, conclusory facts

(Footnote 56 continued):

For example, he explained that defendant's evaluation outcomes were not data driven, but instead were dictated by the administration.

Dr. Brogno suggested that defendant's policies were put into place "perhaps for expediency and the needs of the district rather than the student."[57]  Accordingly, he opined that plaintiff was being evaluated not for her performance, but rather based upon whether or not she fit into defendant's system.[58]  Furthermore, Dr. Brogno stated that plaintiff felt that she was being micromanaged by defendant.

---

(Continuation of footnote 56):

and opinions, legal conclusions, and facts asserted without foundation." (See Defendant's Reply Brief in Support of Motion for Summary Judgment at pages 4-5.)  Therefore, on April 4, 2013, defendant filed its Motion to Strike the Affidavit of Dr. Brogno.

In response, on April 12, 2013, plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike the Affidavit of Dr. Nicholas Brogno.  Plaintiff's primary contention in her memorandum in opposition to the motion to strike is that "[e]ven if Dr. Brogno's affidavit could be construed as hearsay, it would nonetheless be properly considered at the summary judgment stage because Brogno's in-court testimony attesting to the same facts at trial would, of course, be admissible." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike Brogno Aff. at page 2.)  Further, plaintiff contends that, in light of Dr. Brogno's credentials as a school psychologist and educator, he is qualified to offer his opinions regarding various matters in this case.  (Id.)

Even upon consideration of Dr. Brogno's affidavit, plaintiff's constructive discharge claim fails for the reasons expressed in this Opinion.

[57]       Declaration of Nicholas G. Brogno at page 6, ¶ 1.

[58]       Id.

In addition, Dr. Brogno stated that during plaintiff's July 22, 2009 pretermination hearing, Dr. Mulroy was rude and sometimes shouted at plaintiff.[59]

On July 30, 2009, the District's elementary school Assistant Principal, Braedon Hendershot, called plaintiff on the telephone to request plaintiff's office keys, tags, and badge. An intern subsequently occupied plaintiff's previous office space.[60]

On August 2, 2009, plaintiff received a letter from defendant advising plaintiff of her pending termination hearing.[61]

On August 6, 2009, defendant sent plaintiff a Statement of Charges and Notice of Hearing letter.  Plaintiff's termination hearing was scheduled for August 21, 2009.

On August 4, 2009, Donald F. Spry, II, Esquire, on behalf of defendant, forwarded the termination letter to plaintiff's attorney, Donald P. Russo, Esquire, after defendant was informed that Attorney Russo was representing plaintiff.[62]

---

[59]        Declaration of Nicholas G. Brogno at page 4, ¶ 2.

[60]        Mayo Deposition at pages 35, 50.

[61]        Id. at page 45.

[62]        Mayo Deposition, Exhibit 11, letter from Donald F. Spry, II, Esquire, to Attorney Russo dated August 4, 2009.

On August 19, 2009, plaintiff was informed that defendant had decided to withdraw the statement of charges.[63]

Plaintiff returned to work for the 2009-2010 school year. Although defendant did not return the property that was confiscated from plaintiff after the 2008-2009 school year, upon plaintiff's return, she was provided computer access, copy machine and printer privileges, and a telephone with a personal extension.

Plaintiff's office was relocated for the 2009-2010 school year. Her new office was a cubicle at the middle school. Plaintiff shared that office with a visually impaired student and his therapist. At times, plaintiff was required to use classrooms or the boardroom to perform her job duties.[64]

Ms. Kropf testified at her deposition that plaintiff's work space was relocated because she would be primarily working with middle school and high school students, not elementary school students, during the 2009-2010 school year.[65]

Plaintiff testified that high school counselors told her that Dr. Mulroy bragged about relocating plaintiff to a

---

[63]     Mayo Deposition at page 47; see also Mayo Deposition, Exhibit 12, letter from Attorney Spry to Attorney Russo dated August 19, 2009.

[64]     Plaintiff's Statement of Facts at ¶ 43.

[65]     Kropf Deposition at pages 24-25.

small office.  However, plaintiff did not identify those
individuals by name.[66]

On August 26, 2009, a meeting was held to review an
action plan (Plan of Assistance) for plaintiff.  Dr. Mulroy,
Ms. Kropf, and plaintiff attended the meeting.  At the meeting,
plaintiff asked for legal representation before discussing her
evaluation or action plan.  Dr. Mulroy told plaintiff that legal
representation was not necessary.[67]

The Plan of Assistance set forth certain procedures
that plaintiff was required to follow.  Specifically, the plan
required plaintiff to meet each week with Ms. Kropf and Ms.
Kropf's assistant, Dodi Maragulia, to review plaintiff's
performance.  Plaintiff was placed on the action plan following
that meeting.[68]

During the August 26, 2009 meeting, Dr. Mulroy told
plaintiff that if she did not comply with the action plan, there
would be negative consequences.  However, Dr. Mulroy does not
recall saying or doing anything to intimidate plaintiff.[69]

Plaintiff did not participate in creating the action
plan.  Therefore, she did not sign the plan.  Plaintiff

---

[66]        Mayo Deposition at pages 54-55.

[67]        Id. at page 51.

[68]        Mayo Deposition at pages 49, 51; Kropf Deposition at page 17;
Defendant's Exhibit 14, Plan of Assistance dated August 26, 2009.

[69]        Mayo Deposition at pages 51-52.

testified that she felt that the demands of the plan were "tenuous" and "unrealistic".[70]  However, plaintiff never vocalized her concerns about the contents of the Action Plan to her supervisors.[71]

On September 9, 2009, another meeting was held to discuss plaintiff's action plan.  Ms. Kropf, Dodi Maragulia, and plaintiff attended the meeting.[72]

Likewise, on September 16, 2009, a meeting was held to discuss plaintiff's action plan.  Again, Ms. Kropf, Dodi Maragulia, and plaintiff attended the meeting.  During this meeting, plaintiff's action plan was revised.[73]  The revisions pertained to plaintiff's new office assignment.[74]

For some period of time before September 23, 2009, while working for defendant, plaintiff actively sought employment elsewhere.  At some time prior to September 23, 2009, plaintiff secured employment with the Bear Creek Community Charter School as a School Psychologist/School Counselor.  Her

---

[70]     Mayo Deposition at pages 50, 86.

[71]     Kropf Deposition at page 33; Mayo Deposition at pages 51-52.

[72]     Defendant's Exhibit 10, Memorandum re. Action Plan Meeting from Ms. Victoria Kropf to Dr. Linda Mayo dated September 9, 2009.

[73]     Id.

[74]     Id.

rate of pay was higher at Bear Creek Community Charter School than it was at the Bangor Area School District.[75]

On September 23, 2009, plaintiff submitted her letter of resignation to defendant.  In her resignation letter, plaintiff stated: "I am resigning my position as School Psychologist for the Bangor Area School District effective two weeks from the date of this letter."[76]  Plaintiff testified that she decided to resign when she secured employment with Bear Creek.[77]

Following plaintiff's resignation, she commenced employment with Bear Creek Community Charter School.

<u>DISCUSSION</u>

Plaintiff Lynn Mayo asserts a single claim in this federal action against defendant Bangor Area School District. Specifically, plaintiff alleges that defendant violated her right to procedural due process under the Fourteenth Amendment to the United States Constitution.  Plaintiff asserts her claim pursuant to 42 U.S.C. § 1983.[78]

---

[75]      Mayo Deposition at page 59.

[76]      Defendant's Exhibit 12, Resignation letter from Linda A. Mayo, Psy.D., School Psychologist, to Mr. John Reinhart, Superintendent of Schools, dated September 23, 2009.

[77]      Mayo Deposition at pages 58-59.

[78]      Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights.  <u>Gruenke v. Seip</u>, 225 F.3d 290, 298 (3d Cir. 2000).

Ordinarily, to demonstrate a procedural due process violation, a plaintiff must show that (1) she was deprived of an individual interest encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and that (2) the procedures available to her did not provide due process of the law.  Hill v. Borough, 455 F.3d 225, 233-234 (3d Cir. 2006).[79]  In a traditional procedural due process claim involving a public employee, the employee-plaintiff is terminated from her position; and her ensuing claim is that the pre- and/or post-termination procedures afforded to her were insufficient under the Fourteenth Amendment, or absent entirely.

However, a variation on this traditional procedural due process claim may be available where a public employee is not terminated from, but resigns, her position.  Procedural due process principles (notice and an opportunity to be heard)

_____

[79]    An interest in property protected by procedural due process results from a "legitimate claim of entitlement" created by sources such as state law and express or implied contracts. Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 611 (1972); Nicholas v. Pennsylvania State University, 227 F.3d 133, 140 (3d Cir. 2000).  "The hallmark of a constitutionally protected property interest is an individual entitlement that cannot be removed except for cause." Bradley v. Pittsburgh Board of Education, 913 F.3d 1064, 1078 (3d Cir. 1990).

    The Pennsylvania School Code sets forth procedural due process guarantees for tenured public employees prior to dismissal.  See Public School Code of 1949, Act of March 10, 1949, P.L. 30, art. XI, § 1127, 24 P.S. § 11-1127; see also Coleman v. Board of Education Of School District of Philadelphia, 477 Pa. 414, 423, 383 A.2d 1275, 1280 (1978), which states that Section 514 establishes rights in a school district employee not to be dismissed without specific cause and not to be dismissed without due notice and a statement of reasons, and it established corresponding duties in the School District."

differ depending on whether there was an actual or constructive discharge.  Fowler v. Carlton Public Library, 799 F.2d 976, 981 (5th Cir. 1986).

Plaintiff's Memorandum makes it difficult to ascertain whether plaintiff is pursuing a traditional procedural due process claim based upon a wrongful discharge or a procedural due process claim based upon a constructive discharge.  The opening sentence in the "Background" section of the memorandum reads: "The Plaintiff in the case at bar has filed a lawsuit against the Defendant, alleging that she was terminated in violation of 42 U.S.C. [§] 1983."[80]  However, the first sentence in the "Argument" section of Plaintiff's Memorandum reads: "The Plaintiff, Dr. Linda Mayo, was employed as a school psychologist by the Defendant Bangor Area School District from March 27, 2009 until she was constructively discharged on September 23, 2009."[81]

After arguing that plaintiff was constructively discharged, Plaintiff's Memorandum switches back to her wrongful termination argument and asserts that plaintiff's record evidence reveals serious due process violations because

---

[80]        Plaintiff's Memorandum at page 1.

[81]        Id. at page 2.

plaintiff never received a <u>Loudermill</u> hearing.[82]  Then, in that same section of Plaintiff's Memorandum, plaintiff discussed the events leading up to her "constructive termination".[83]  Finally, Plaintiff's Memorandum returns to the argument that plaintiff was constructively discharged.[84]

However, the only claim plaintiff asserts in her Complaint is a constructive discharge procedural due process claim.  Therefore, it is that claim which I evaluate and address in this Opinion in considering Defendant's Motion for Summary Judgment.

As the United States Court of Appeals for the Fifth Circuit explained in <u>Fowler v. Carlton Pubic Library</u>, procedural due process principles differ depending on whether there was an actual or constructive discharge.  799 F.2d 976, 981 (5th Cir. 1986).  In <u>Fowler</u>, the Court clarified that procedural due process guarantees do not apply to constructive discharge claims because they are "just not feasible when the gist of the employees claim is that [she] was forced to resign by unbearable

---

[82]    Plaintiff's Memorandum at pages 5-17.  In <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment of the United States Constitution requires that a tenured public employee be provided with a hearing, oral and written notice of the charges against him, an explanation of the employers evidence and the opportunity to present his side of the story.

[83]    Plaintiff's Memorandum at page 16.

[84]    <u>Id.</u> at pages 17-21.

working conditions." <u>Fowler</u>, 799 F.2d at 980; <u>see also</u> <u>Vearling</u> <u>v. Bensalem Township School District</u>, 1997 WL 128096, at *5 (E.D.Pa. March 18, 1997)(Waldman, J.)(discussing <u>Fowler</u>, <u>supra.</u>)

Constructive discharge in a procedural due process case constitutes a Section 1983 violation "only if it amounts to forced discharge to avoid affording [procedural due process guarantees]." <u>Fowler</u>, 799 F.2d at 981.

Here, despite spending a significant portion of her memorandum discussing them, plaintiff has failed to explain why traditional procedural due process guarantees afforded prior to *actual* discharge are relevant in this *constructive* discharge case. Plaintiff cites <u>Dee v. Borough of Dunmore</u>, 549 F.3d 225 (3d Cir. 2005), and <u>Ginotek v. City of Philadelphia</u>, 808 F.2d 241 (3d Cir. 1986), noting that under Pennsylvania law, suspension of employment, like termination of employment, can trigger a violation of procedural due process rights.

However, as explained above, plaintiff's employment was neither terminated nor suspended. It is undisputed that the District began the process of terminating plaintiff's employment. However, it is equally undisputed that the District withdrew its statement of charges of termination on August 19, 2009.[85] Thereafter, plaintiff returned to work for the 2009-2010

---

[85]          Defendant's Statement of Facts at ¶ 42.

school year.[86]   Then, after the commencement of the 2009-2010

school year, plaintiff resigned on September 23, 2009.[87]   In

short, defendant did not terminate plaintiff's employment.

    Accordingly, the issue of whether plaintiff was

afforded procedural due process guarantees such as a hearing,

oral and written notice of the charges against her, and an

opportunity to be heard, is not material to her constructive

discharge claim asserted in this case.[88]

### Constructive Discharge

    Accordingly, the pertinent question is whether

plaintiff was constructively discharged from her public

employment in violation of her due process rights.   For the

reasons discussed below, I hold that plaintiff has not produced

sufficient record evidence to permit a reasonable factfinder to

conclude that she was constructively discharged from her

employment with defendant.

---

[86]    Defendant's Statement of Facts at ¶ 42.

[87]    Id. at ¶ 53.

    Likewise, the record evidence does not suggest that the District
suspended plaintiff's employment prior to her resignation.   There is no
mention of defendant suspending plaintiff's employment in the pleadings,
record papers, depositions, affidavits, exhibits or facts submitted by either
party.

[88]    In Defendant's Reply Memorandum, Defendant argues that plaintiff
has failed to utilize the remedial processes provided by the Pennsylvania
School Code of 1949.   However, defendant should have raised this issue in its
Motion for Summary Judgment to allow plaintiff adequate opportunity to
respond.   Furthermore, it is defendant's burden to demonstrate the existence

(Footnote 88 continued):

On Defendant's Motion for Summary Judgment, the burden lies with defendant, to demonstrate that even if all reasonable inferences are drawn in favor of plaintiff and the record evidence is viewed in the light most favorable to plaintiff, no reasonable jury could find in plaintiff's favor.[89]

An employee resignation is either voluntary or involuntarily procured under the doctrine of constructive discharge.  Leheny v. City of Pittsburgh, 183 F.3d 220, 227 (3d Cir. 1999).

To determine whether an employee was constructively discharged, the court should examine the surrounding circumstances to test the ability of the employee to exercise free choice.  Id. (quoting Scharf v. Department of the Air Force, 710 F.2d 1572, 1574 (Fed.Cir. 1983)).  The circumstances should demonstrate that when plaintiff resigned, she was

---

(Continuation of footnote 88):

of an effective remedial process and defendant's burden to demonstrate plaintiff's unreasonable failure to utilize that process.  Pennsylvania State Police v. Suders, 542 U.S. 129, 146, 124 S. Ct. 2342, 2354, 159 L. Ed. 2d 204 (2004).  Defendant has failed to provide sufficient evidence to demonstrate that plaintiff has unreasonably failed to utilize a remedial process afforded by defendant.  Therefore, this issue is moot.

[89]      Plaintiff contends that the existence of Joseph Gunnels' June 23, 2009 evaluation presents a genuine issue of material fact in this case.  See Plaintiff's Statement of Facts at ¶ 29.  However, because defendant neither addressed Mr. Gunnels' evaluation in defendant's Motion for Summary Judgment or Concise Statement of Facts, nor provided any evidence refuting the existence of Mr. Gunnels' evaluation, I will accept plaintiff's evidence of Mr. Gunnels' evaluation as undisputed fact for purposes of this motion.  Because there is no genuine issue regarding its existence, Mr. Gunnels' evaluation does not present a genuine issue of material fact that would render summary judgment inappropriate here.

"fleeing from a stick", not "reaching for a carrot".  Connors v. Chrysler Financial Corp., 160 F.3d 971, 975 (3d Cir. 1998).

The United States Court of Appeals for the Third Circuit has made clear that employee resignations are presumed to be voluntary.  Leheny, 183 F.3d at 227 (citing Angarita v. St. Louis County,  981 F.2d 1537, 1544 (8th Cir. 1992)).  This presumption remains intact until the employee presents evidence to establish that the resignation was involuntarily procured. Leheny, 183 F.3d  at 227.

"If an employee retires of [her] own free will, even though prompted to do so by some action of [her] employer, [she] is deemed to have relinquished [her] property interest in [her] continued employment for the government, and cannot contend that [she] was deprived of [her] due process rights." Leheny, 183 F.3d at 227 (citing Hargray v. City of Hallandale, 57 F.3d 1560, 1567 (11th Cir. 1995)).

Accordingly, there are two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: (1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by misrepresenting a material fact to the employee.  Rife v. Borough of Dauphin, 647 F.Supp.2d 431, 449-450 (M.D.Pa. 2009)(Rambo, S.J.).

Here, plaintiff does not allege that defendant obtained her resignation by misrepresenting any material fact. Therefore, in order to overcome the presumption that her resignation was voluntary, she must provide evidence under which a reasonable jury could conclude that defendant forced her resignation by coercion or duress.  See Rife, 647 F.Supp.2d at 449-450.

In O'Connell v. County of Northampton, my colleague, United States District Judge Eduardo C. Robreno, identified five factors to consider when determining whether a resignation resulted from coercion or duress.  Under this test the court should consider whether the employee (1) was presented with an alternative to resignation, (2) understood the nature of the choice she was given, (3) had a reasonable time to choose, (4) was permitted to select the effective date of her resignation, and (5) had the advice of counsel.  O'Connell, 79 F.Supp.2d 529, 533 (E.D.Pa. 1999)(Robreno, J).

Here, plaintiff has not provided record evidence demonstrating that continuing to work as a school psychologist for the District in the Fall of 2009 was not an alternative to resigning.  Furthermore, she has not provided record evidence to show that she did not understand the nature of her choice between continuing to work and resigning.  To the contrary, plaintiff's September 23, 2009 letter of resignation provided

-33-

defendant with two weeks notice of plaintiff's final day of work.

Finally, it is undisputed that plaintiff was represented by Donald P. Russo, Esquire, and thus had the advice of legal counsel before resigning from her employment with the District.  Although the record does not suggest that plaintiff's counsel was present at the August 26, 2009 meeting, it is clear from the record that Attorney Russo began advising plaintiff concerning her employment situation as early as August 4, 2009, three weeks before that meeting took place and seven weeks before she submitted her letter of resignation.  Accordingly, as applied to the factors set forth in O'Connell, supra, the circumstances in this case would not permit a reasonable factfinder to conclude that plaintiff's resignation resulted from coercion or duress.

Moreover, because the Third Circuit employs an objective test to determine whether an employee was constructively discharged, plaintiff's subjective perceptions of unfairness or harshness do not govern this ruling.  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013). Allegations of "stressful and frustrating" conditions do not reach the threshold of intolerable conditions that must be reached for plaintiff to survive summary judgment.  Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 169 (3d Cir. 2001).

Indeed, the Third Circuit has stated that "it is clear that unfair and unwarranted treatment is by no means the same as constructive discharge."  Clowes v. Allegheny Valley Hospital, 991 F.2d 1159, 1162 (3d Cir. 1993).

Instead, plaintiff must show that defendant "knowingly permitted conditions so intolerable that a reasonable person subject to them would resign."  Mandel, 706 F.3d at 169 (citing Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996)).

In the Mandel case, the Third Circuit articulated a number of factors to consider when determining whether an employee was forced to resign, including whether she was (1) threatened with discharge, (2) encouraged to resign, (3) demoted, (4) subject to reduced pay or benefits, (5) involuntarily transferred to a less desirable position, (6) subject to altered job responsibilities, or (7) given unsatisfactory job evaluations.  Mandel, 706 F.3d at 169-170.

In Clowes, the Third Circuit used these factors to conclude that the employee in that case was not constructively discharged.  Clowes, 991 F.2d at 1162.  There, the employee's supervisor spoke in a "demeaning, condescending manner", sharply criticized the employee in public, and oversaw strict and persistent supervision of the employee on a daily basis.  Id. at 1160.  Furthermore, the supervisor reduced the employee's

longstanding "good" evaluation grade to an evaluation grade of "fair".  Clowes, 991 F.2d at 1160.

However, in Clowes, the Third Circuit stressed that "the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge."  Id. at 1162. Accordingly, the court held that "the evidence was insufficient to show that [the employee] was constructively discharged."  Id.

Likewise, in Duffy, the employee-plaintiff argued that she was constructively discharged because she was overworked in an understaffed department, she was the only supervisor who was evaluated through a weekly report card system, her supervisors made negative comments about her age, other employees failed to cooperate with her, and other employees were paid for overtime work, while she was not.  Duffy, 265 F.3d at 167-168.  In that case, the employee's claim did not survive summary judgment because "the situation [did] not reach the threshold of intolerable conditions" necessary to invoke the doctrine of constructive discharge.  Id. at 169.

Specifically, the Duffy court explained that, "[a]lthough certainly stressful and frustrating, the alleged conduct would not compel a reasonable person to resign."  Id.

Furthermore, in Lebofsky v. City of Philadelphia, the employee-plaintiff was threatened with discharge, transferred to a less desirable and less significant position, moved to a less

desirable office, and no longer provided a secretary.
394 Fed.Appx. 935, 940 (3d Cir. 2010).  There, the Third Circuit
stated in a non-precedential Opinion that "no reasonable finder
of fact asked to consider the litany of real or perceived
slights suffered by [the employee]...could conclude that he
suffered under conditions that could be objectively described as
being so intolerable that he had no recourse but to quit."  Id.
Accordingly, summary judgment was entered against the employee
on his constructive discharge claim.  Id.

        Based upon the caselaw and applicable factors
discussed above, I conclude that no reasonable jury could find
that plaintiff's working conditions were so intolerable that a
reasonable person subject to them would be compelled to resign.
Dr. Mulroy told plaintiff at the July 22, 2009 meeting that she
would seek plaintiff's termination if plaintiff did not resign.
Nonetheless, in light of subsequent events, that statement is
insufficient to support the conclusion that plaintiff's
resignation two months later (September 23, 2009) was the
product of coercion or duress.

        Rather, the record evidence demonstrates that that
statement was directly related to the formal termination process
which the District aborted prior to the commencement of the
2009-2010 school year.  Defendant withdrew its contemplation of
terminating plaintiff.  Moreover, plaintiff willingly returned

to work for the 2009-2010 school year.  Plaintiff has failed to

provide evidence establishing a causal connection between

Dr. Muroy's statement in July and plaintiff's resignation on

September 23, 2009, particularly in light of the withdrawal of

the District's charges of termination in the interim period.

The record clearly indicates that plaintiff was not

complying with her reporting requirements prior to receiving

Ms. Kropf's unsatisfactory evaluation.[90]  Moreover, plaintiff's

unexcused absences were of major concern to defendant during

plaintiff's tenure.

Plaintiff notes that other employees also failed to

comply with their reporting requirements.  However, as discussed

above, and particularly important to this analysis, unfairness

and harshness do not invoke the doctrine of constructive

discharge.  Clowes, 991 F.2d at 1162.

Further, plaintiff has failed to provide any evidence

showing that she was demoted, subject to reduced pay or

benefits, transferred to a less desirable position, or subject

to altered job responsibilities.

Rather, plaintiff's record evidence demonstrates that

her office was relocated to the middle school, where she was

required to share work space and sometimes use a classroom or

---

[90]        Gunnels Deposition at pages 34, 42.  See also Mayo Deposition,
Exhibit5, End-of Year Employee Evaluation dated June 23, 2009; see also Mayo
Deposition, Exhibit 4, Email of Joseph Gunnels to Linda Mayo dated  June 25,
2009.

boardroom to complete work.  Additionally, plaintiff no longer had access to a laptop computer provided by the District, though plaintiff had access to District desktop computers.

Although plaintiff testified that she found her working conditions intolerable and felt that she was being "railroaded" out of her position with the District, these conditions are inconveniences and unpleasantries which do not rise to the level of a constructive discharge under the applicable objective standard.

Upon plaintiff's return for the 2009-2010 school year, she was provided desktop computer access, copy and printer privileges, and a phone with her personal extension.  As discussed above, allegations of stressful and frustrating conditions do not reach the threshold of intolerable conditions that is necessary for plaintiff to survive summary judgment. See Duffy, 265 F.3d at 169.

In Clowes, the Third Circuit Appeals Court stated that it was "highly significant" that the employee, prior to resigning, never advised her employer that she would feel compelled to leave if changes regarding her work situation were not made.  Clowes, 991 F.2d at 1161.  There, the employee did not attempt to file a grievance until after she resigned.  Id. The court explained that a reasonable employee would likely explore such alternative avenues thoroughly before coming to the

conclusion that resignation was the only option.  <u>Clowes</u>,
991 F.2d at 1161.

     Here, plaintiff has not provided record evidence
suggesting that she informed anyone within the District that she
felt compelled to resign prior to her letter of resignation.
Instead, like the employee in <u>Clowes</u>, plaintiff did not file a
grievance until after she resigned.  This fact illustrates the
voluntary nature of plaintiff's resignation.

     In light of these considerations, plaintiff has failed
to provide sufficient evidence upon which a reasonable jury
could conclude that her employment situation reached the
threshold of intolerable conditions necessary to invoke the
doctrine of constructive discharge.

     Constructive discharge claims based solely on
unpleasant and frustrating working conditions must be examined
critically to ensure that the constructive discharge doctrine is
not improperly used as a means of thwarting public employers'
nondiscriminatory efforts to achieve satisfactory employee
performance.[91]  Although plaintiff has offered evidence

---

[91]     Normally, constructive discharge claims involve an alleged
constructive discharge resulting from employer discrimination based on
employee's constitutionally protected class.  <u>See</u> <u>Lebofsky v. City of</u>
<u>Philadelphia</u>, 394 Fed.Appx. 935 (3d Cir. 2010)(involving ADEA claim); <u>Leheny</u>
<u>v. City of Pittsburgh</u>, 183 F.3d 220 (3d Cir. 1999)(involving ADA claim); <u>Rife</u>
<u>v. Borough of Dauphin</u>, 647 F.Supp.2d 431 (M.D.Pa. 2009) (involving Title VII
claim); <u>Connors v. Chrysler Financial Corp.</u>, 160 F.3d 971 (3d Cir. 1998)
(involving ADEA claim); <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157 (3d
Cir. 2013)(involving Title VII claim); <u>Clowes v. Allegheny Valley Hospital</u>,
991 F.2d 1159 (3d Cir. 1993)(involving ADEA claim).

indicating that her work conditions were unpleasant, she failed to provide sufficient evidence upon which a reasonable jury could conclude that her working conditions were so intolerable that a reasonable person subject to them would resign.

Instead, it is apparent from the record as a whole that plaintiff made a choice between working in an unpleasant environment and resigning.  More specifically, the record evidence demonstrates that plaintiff made a voluntary, informed decision based, at least in part, upon the advice of counsel and economic considerations.[92]

Because employee resignations are presumed to be voluntary and plaintiff failed to provide sufficient record evidence upon which a reasonable jury could conclude that her working conditions were so intolerable that a reasonable person subject to them would resign, I grant defendant's Motion for Summary Judgment.

---

[92]     Before plaintiff submitted her letter of resignation on September 23, 2009, she actively sought employment elsewhere.  Defendant's Statement of Facts at ¶ 54.  Furthermore, before September 23, 2009 plaintiff secured employment with the Bear Creek Community Charter School.  Id.  Plaintiff's rate of pay was higher at Bear Creek than it was at the Bangor Area School District.  Id. at ¶ 56.

On September 23, 2009 plaintiff submitted her letter of resignation to defendant.  Id. at ¶ 53.  In that letter, plaintiff stated, "I am resigning my position as School Psychologist for the Bangor Area School District effective two weeks from the date of this letter."  Defendant's Exhibit 12.

These actions, viewed objectively, indicate plaintiff made a conscious, voluntary decision to resign from her position with defendant.

<u>CONCLUSION</u>

For all of the foregoing reasons, I grant Defendant's Motion for Summary Judgment and enter judgment in favor of defendant and against plaintiff on plaintiff's Complaint.